UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ADRIAN CURB, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Nos. 3:12-CV-209-TAV |
| | ) | 3:09-CV-36-TAV |
| UNITED STATES OF AMERICA, | ) | 3:04-CR-182-1-TAV |
| | ) | |
| *Respondent.* | ) | |

## **MEMORANDUM OPINION**

Before the Court now is Petitioner Adrian Curb's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. On December 21, 2004, a federal grand jury charged Petitioner with nine counts of distributing crack cocaine, all in violation of 21 U.S.C. § 841(a)(1) [Doc. 1].[1] Pursuant to 21 U.S.C. § 851, the United States filed notice that Petitioner had a prior felony drug conviction and thus faced enhanced penalties if convicted [Doc. 3]. Petitioner's prior Tennessee felony convictions included: (1) conviction for possession of cocaine for resale arising from a March 15, 1997 arrest [Docs. 13, 52], and (2) conviction for aggravated assault arising from an April 7, 1997 arrest [Doc. 52]. Both arrests occurred when Petitioner was seventeen, but were consolidated and transferred to Anderson County Criminal Court, where Petitioner was convicted and sentenced to eight years' imprisonment, on October 20, 1997 [*Id.*].

---

[1] All citations to the record are found on the docket of Case No. 3:04-cr-182.

On February 28, 2005, Petitioner pleaded guilty to distributing crack cocaine on September 23, 2004, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and distributing at least five grams of crack cocaine on October 14, 2004, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) [Docs. 19, 20]. In his plea agreement, Petitioner stipulated that he understood the Court could "impose any lawful term of imprisonment up to the statutory maximums" [Doc. 20], and his "sentencing determination [would] be based upon the entire scope of [his] criminal history . . . [as well as] other factors . . . in the [United States Sentencing Guidelines ("the Guidelines")]" [*Id.*]. Petitioner went on to acknowledge "nothing contained in [his] plea agreement or any factual basis limits the Court in . . . the facts it may consider in establishing the Guidelines range or an appropriate sentence" [*Id.*]. Finally, Petitioner noted "no representations [had] been made to him by an representative of the United States regarding the sentence he would receive," [*Id.*], "any estimates or predictions made . . . by his attorney or any other person regarding the sentence he [would] receive . . . were merely predictions or estimates" [*Id.*], and "he [would] not be permitted to withdraw from [his] plea agreement nor withdraw his guilty plea based upon estimates anyone may have made as to his possible sentence" [*Id.*]. In exchange, the United States agreed to move at the time of sentencing to dismiss the remaining seven counts of the indictment as to Petitioner [*Id.*]

During his Rule 11 colloquy, Petitioner confirmed he had "an ample opportunity" to discuss the case with his attorney, with whose representation he was satisfied" [Doc. 40], "he understood the legal rights he was giving up by pleading guilty," [*Id.*], and that

2

his plea was voluntary [*Id.*]. Further, Petitioner denied "any person . . . [had] promised or suggested that [he] would receive a lighter sentence or any other form of leniency if [he] plead[ed] guilty" [*Id.*]. After the Court informed Petitioner his "sentence could be enhanced or increased due to any prior convictions [he] might have" [*Id.*], Petitioner reiterated that, knowing the statutorily-authorized penalties and having discussed with his counsel the likely application of the Guidelines, he wanted to plead guilty [*Id.*].

In calculating the applicable Guidelines range, the probation officer deemed Petitioner accountable for 24.6 grams of crack cocaine, which resulted in a base offense level of 28 [PSR ¶¶ 15, 17]. Petitioner's base offense level was subsequently enhanced to 37 after the probation officer determined his two 1997 felony convictions qualified him as a career offender pursuant to section 4B1.1 of the Guidelines [*Id.* ¶ 25]. The probation officer then applied a three-level reduction for acceptance of responsibility pursuant to section 3E1.1, bringing Petitioner's total offense level to 34 and yielding a Guidelines range of 262 to 327 months' imprisonment when combined with his criminal history category of VI [*Id.* ¶¶ 26–27, 40]. In light of the forgoing, the Court classified Petitioner as a career offender and sentenced him to a bottom-of-the-guidelines term of 262 months' imprisonment on February 23, 2007 [Doc. 24].

Petitioner filed a direct appeal challenging his categorization as a career offender under section 4B1.1 based on the belief that his two 1997 convictions should have been treated as a single "prior felony conviction" under section 4B1.2(c) and arguing that his sentence was improperly enhanced as a consequence [Doc. 21, 41]. Among other things,

3

Petitioner argued that, because state and federal law provided that a juvenile is not "arrested" until his case is transferred to criminal court and his two actions were transferred on the same day, his criminal history should be construed as containing only one prior sentence for purposes of section 4A1.1(a) and thus only one prior felony conviction for purposes of sections 4B1.1(a) and 4B1.2(c) [Doc. 33]. The United States responded by noting Petitioner's Presentence Investigation Report listed separate arrest dates for his 1997 felonies and section 4A1.2(a)(2) provides prior sentences are "always . . . counted separately . . . were imposed for offenses that were separated by an intervening arrest" [Doc. 33]. The Sixth Circuit determined Petitioner was "arrested" for purposes of section 4A1.2(a)(2) "when he was taken into custody as a minor," *United States v. Curb*, 625 F.3d 968, 972 (6th Cir. 2010), and his separate arrests in March and April of 2007 resulted in an "intervening arrest," *id.* Based on the forgoing, the Sixth Circuit concluded that Petitioner was properly categorized as a career offender and thus subject to a Guidelines range of 262 to 327 months' imprisonment. *Id.*

## I. STANDARD OF REVIEW AND APPLICABLE CLAIMS

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)). He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in

4

Case 3:04-cr-00182   Document 61   Filed 07/15/15   Page 4 of 12   PageID #: 236

the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).

While Petitioner presents a single ineffective assistance of counsel claim in his § 2255 motion, he grounds this single claim in two alleged deficiencies: (1) his attorney deviated from the professional standard of care when he failed to fully apprise Petitioner of how the Guidelines operate or his "true sentence exposure" and (2) his attorney deviated from the professional standard of care when he failed to object to the Court's classification of Petitioner's 1997 convictions as "prior felony convictions" sufficient to trigger career offender enhancement under section 4B1.1(a).[2] The Court finds neither theory underlying Petitioner's ineffective assistance of counsel claim warrants relief.

## II. ANALYSIS

A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987). First, the petitioner must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *id.*, as

---

[2] Petitioner also appears to allege that counsel was ineffective for not arguing that Petitioner's 1997 aggravated assault conviction was not "categorically a violent felony" [Doc. 52]. Petitioner's failure to include any supporting facts or relevant legal authority is fatal to his claim. *See Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972) (noting that "conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing"). Further, Petitioner's PSR indicates that the conviction resulted from Petitioner's shooting of David Dunlap during an attempted robbery [PSR ¶ 33], information which tends to show that the conviction was, in fact, a qualifying crime of violence for purposes of section 4B1.1(a).

5

measured by "prevailing professional norms," *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and the petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action might be considered sound . . . strategy") (internal citation omitted).

Second, the petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285–86 (2000). If a petitioner fails to prove that he sustained prejudice, the Court need not decide whether counsel's performance was deficient. *See United States v. Hynes*, 467 F.3d 951, 970 (6th Cir. 2006) (holding that alleged "flaws" in trial counsel's representation did not warrant new trial where the claims, even if true, did not demonstrate that the jury would have reached a different conclusion).

    A.    **Failure to fully inform Petitioner about function of the Guidelines or provide accurate prediction of potential sentence**

Petitioner's first theory alleges his attorney deviated from professional norms when he failed to fully inform Petitioner about how the Guidelines operate or advise Petitioner of his "true sentencing exposure" [Doc. 52 p. 12–13]. Specifically, Petitioner

6

alleges that his attorney incorrectly suggested during the plea negotiation process that he would receive a section 5K1.1 motion for downward departure and a sentence of "no more" than fifteen years if he (1) pleaded guilty, (2) provided some information related to United States' investigation of another suspect, and (3) provided background information pertaining to drug trafficking activity within the Oak Ridge Area [*Id.* at 12]. Petitioner goes on to argue, because no section 5K1.1 motion ultimately arose and he received a sentence greater than fifteen years, his attorney's advice amounted to "coercion" of a guilty plea and deviation from professional standards [*Id.* at 13]. Petitioner argues he was prejudiced by his attorney's conduct because absent "counsel's lies and coercion . . . he never would have [pleaded] guilty" [*Id.* at 14].

      Petitioner's claim of ineffective assistance of counsel based on this first theory fails as a matter of law. While "no procedural devise for the taking of guilty pleas is so perfect in design and exercise as to warrant a *per se* rule rendering it 'uniformly invulnerable to subsequent challenge,'" *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)), "representations of the [petitioner], his lawyer, and the prosecutor at [the original plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding." *Id.* at 74. Based on the forgoing, it is said that "[s]olemn declarations in open court carry a strong presumption of verity," *id.*, and justify summary dismissal of any collateral challenge based solely on conclusory allegations or incredible contentions on the face of the record. *Id.*

Petitioner was correctly advised of his sentencing exposure during the plea colloquy [Doc. 40], and in his written plea agreement [Doc. 20], and received ample warning any sentence predictions made by counsel were estimates that would not support a subsequent effort to withdraw of his guilty plea in the face of a longer than expected sentence [Doc. 40 p. 8–9, 12–14; Doc. 20 ¶¶ 2(a), 3, 5–7]. When given the opportunity, Petitioner swore under oath he was not threatened, forced, or otherwise induced to plead guilty [Doc. 40, p. 8], he was satisfied with his representation by counsel [*Id.* at 6], and that he was pleading guilty because he was, in fact, guilty [*Id.* at 11]. Finally, Petitioner answered no when asked whether "any person, including an officer or agent of the Government, promised or suggested that [he] would receive a lighter sentence or any other form of leniency [for] plead[ing] guilty" [*Id.* at 8].

Generalized allegations about a failure to properly inform Petitioner about how the Guidelines operate or provide a more accurate prediction of the sentence imposed do not rise to the level required to overcome the presumed validity of sworn statements during the plea proceeding. *Compare Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (finding the defendant bound statements he made in response to the court's plea colloquy); *and Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (finding the petitioner bound to plea colloquy responses despite some evidence that contradicted statements made therein); *with Blackledge v. Allison*, 431 U.S. at 74 (finding summary dismissal inappropriate where the petitioner provided specific detailed terms of the alleged broken promise; when, where, and by whom such promise was made; and the identity witness to

8

conversation). Because Petitioner has failed to meet this standard, any claim based upon this first theory of ineffective assistance of counsel fails as a matter of law.

> B. **Failure to object to categorization of Petitioner's 2007 convictions as "prior felony convictions" pursuant to section 4B1.1(a)**

Petitioner argues his attorney again deviated from prevailing professional norms when he failed to object to probation's categorization of Petitioner's two 1997 convictions as "two prior felony convictions" sufficient to trigger career offender enhancement under section 4B1.1(a) [Doc. 52 p. 18]. Specifically, Petitioner argues that his October 20, 1997 convictions for aggravated assault and possession of cocaine cannot constitute "two prior felony convictions" for purposes of section 4B.1.1(a) because consolidation of the charges meant he incurred a single sentence for purposes of section 4A1.1(a), i.e., his two prior convictions were not "counted separately under . . . [sections] 4A1.1.(a), (b), and (c)" as required by section 4B1.2(c) [*Id.*]. This allegation fails for two reasons.

First, Petitioner's assertion lacks support in the factual record. To the contrary, counsel objected to the probation officer's characterization of Petitioner's two 1997 convictions as "separate" for purposes of sections 4B1.2(c) and 4A1.1(a)(2) in both his filed objections to PSR [Doc. 21 p. 2], and again during Petitioner's sentencing hearing [Doc. 33 p. 12-15]. Because the record conclusively demonstrates counsel did exactly what Petitioner now claims he should have done, Petitioner has failed to point to any act or omission that can be characterized as deviation from prevailing professional norms.

9

Second, Petitioner's assertion constitutes an attempt to recast an argument he put forth, and the Sixth Circuit rejected, on direct appeal in the guise of an ineffective assistance of counsel claim. The ineffective assistance claim fails for the same reasons.

The Guidelines categorize a defendant as a career offender if " (1) [he] . . . was at least eighteen years old at the time [he] . . . committed the instant offense of conviction; (2) the instant offense is . . . a controlled substance offense; and (3) [he] . . . has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Guidelines Manual § 4B.1.1(a)(2007). The Guidelines goes on to define "prior felony convictions" to mean when "(1) the defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense . . . and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provisions of [sections] 4A1.1(a), (b), or (c)."[3] U.S. Sentencing Guidelines Manual § 4B1.2(c)(2007). Finally, section 4A1.1(a) notes that sentences, and for the purpose of section 4B1.2(c) convictions, "always . . . count[] separately [where] . . . [the underlying]

---

[3] While it is true that neither section 4A1.1(a) nor section 4A1.2(a)(2) address prior convictions on their face, the necessary consequence section 4B1.2(c)'s cross reference to section 4A1.1 is that any determination regarding whether a defendant's prior convictions are treated as single or multiple "prior felony convictions" under section 4B1.1(a) hinges on whether such convictions would qualify as single or separate *sentences* under the tests set forth in section 4A1.2(a)(2).

10

offenses . . . were separated by an intervening arrest." U.S. Sentencing Guidelines Manual § 4A1.2(a)(2)(2007).[4]

The Sixth Circuit rejected Petitioner's argument that he was not "arrested" in either 1997 case for purposes of section 4A1.2(a)(2) until the consolidated transfer to Anderson County Criminal Court. *United States v. Curb*, 625 F.3d 968, 972 (6th Cir. 2010). Based upon this conclusion, the Sixth Circuit found Petitioner's April 7, 2007 arrest qualified as an "intervening" arrest under section 4A1.2(a)(2), *id.*, and Petitioner was properly deemed a career offender with "two prior felony convictions" under sections 4B1.2(c) and 4B1.1(a). *Id.*

Because Petitioner was properly deemed a career offender under section 4B1.1(a), he cannot show any prejudice arose from failure to raise the issue. No relief is warranted.

## III. CONCLUSION

The Court finds that because the claim presented in the motion [Doc. 52] lack merit, Petitioner is not entitled to relief pursuant to 28 U.S.C. § 2255. A hearing is unnecessary in this case. Accordingly, a judgment will enter **DENYING** the motion, [Doc. 52], and the action will be **DISMISSED**. The Court will **CERTIFY** any appeal

---

[4] It is important to note that there was some debate on appeal about whether the amended language of Amendment 709, which became effective November 1, 2007, clarified section 4A1.2(a)(2) and thus applied to Petitioner's February 23, 2007 sentencing. The Sixth Circuit ultimately concluded that, even if it were to accept the argument that the amendment was clarifying and thus retroactive, the Court properly categorized Petitioner as a career offender under the amended language. While the Court's current analysis similarly focuses on the language of section 4A1.2(a)(2) as amended by Amendment 709, Petitioner's claim fails based on the pre-amendment language of section 4A1.2(a)(2) as well. *See* U.S. Sentencing Guidelines § 4A1.2(a)(2)(2006) (noting prior sentences, and for purposes of section 4B1.1(a) convictions, "imposed in unrelated cases are to be counted separately").

11

from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure.

**ORDER ACCORDINGLY.**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE